IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN BELL,

    **Plaintiff,**

    v.                        CASE NO. 18-3206-SAC

(FNU) ENGLISH, Warden,
USP-Leavenworth, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER
## AND ORDER TO SHOW CAUSE

Plaintiff Steven Bell is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint that cures all the deficiencies discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff proceeds pro se and in forma pauperis in this prisoner civil rights action. At the time of filing, Plaintiff was in federal custody at USP-Leavenworth in Leavenworth, Kansas ("USPL"). Plaintiff alleges that on May 16, 2018, CO Green observed a torn towel coming from Plaintiff's cell in the SHU during the "towel exchange." Despite Plaintiff's request to be written up, Green instead returned with Lt. Ratz and proceeded to strip Plaintiff and his cell mate and remove all of their clothing and bedding, replacing them with paper clothing and sheets. Plaintiff alleges that the paper sheets did not cover the mattress, which was unsanitary. Plaintiff alleges he has had a staph infection since touching the mattress. Plaintiff alleges that the SHU

1

walls are caked with black mold.  Plaintiff alleges that while Plaintiff was being stripped, "he" told Plaintiff about other inmates who had been beaten for breaking the warden's rules and stated that they could have been beaten as well as shot with the "bean bag gun" even if they complied.  Plaintiff did not feel safe in the SHU and sought psychological help.

Plaintiff also alleges that staff have denied him due process, access to the courts and legal materials, including the law library, and denied processing legal mail and forms to exhaust administrative remedies.  Plaintiff alleges that Defendant Dahmer has refused to allow Plaintiff to exhaust his administrative remedies, denied visitation and verbally abused Plaintiff with profane language.  Plaintiff alleges that staff have processed some of his forms, but at least five have been destroyed.  Plaintiff alleges that "they" are retaliating by hindering Plaintiff's legal efforts to get relief.  Defendant Wilson denied copies to Plaintiff stating that he "should have thought of that before reporting them."  Plaintiff claims that either mailroom staff or SHU staff have tampered with his legal mail.  Plaintiff alleges that in early June he received a letter from his lawyer which was opened in the mailroom without Plaintiff being present.  Plaintiff alleges that he also received a 1983 on July 6 that was dated June 11 and had been held for a few weeks.  Plaintiff also alleges that staff intentionally rerouted his mail because a 2241 he addressed to this Court was received back from the Kansas Supreme Court.  Since that incident Plaintiff has not been allowed to seal his legal mail.  Plaintiff alleges that he has been denied copies, visitation with family and legal calls while housed in the SHU.  Plaintiff alleges that on July 6, 2018, CO McCall violated his right to due process by denying him a disciplinary hearing after a verbal altercation and took a Bible and a bag of Doritos out of Plaintiff's cell without issuing a "shakedown slip."  Plaintiff alleges that he was unable to practice his religion because he was without his Bible for three days.

Plaintiff names as Defendants Warden English; CO Green; Counselor B. Dahmer; B-Unit Manager Wilson; Unidentified Mailroom Worker; Two Unidentified SHU Workers; and CO McCall. Plaintiff seeks injunctive relief: to be able to seal his legal mail; to prevent his legal mail from being tampered with; to be provided with forms to exhaust administrative remedies; for his forms to be processed in a timely manner; access to the law library three times per week; access to legal materials, legal copies, real pens, and paper; to prevent staff from retaliating against him; and that no attempts be made to circumvent Plaintiff's medical hold to transfer Plaintiff until after scheduled medical procedures. Plaintiff also seeks $100,000 "for paper days ($50,000 per day);" $50,000 for his skin infection scarring and damage from paper; $10,000 for each day he was without his Bible; $100,000 for violation of due process; $100,000 for verbal abuse by Dahmer; $100,000 for retaliation by Wilson; $100,000 for violating the Eighth Amendment; $200,000 in punitive damages; and $200,000 in psychological damages.

**II. Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court

liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*,

561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Discussion

### 1. *Injunctive Relief*

Plaintiff seeks injunctive relief. Plaintiff was transferred to a halfway house and is no longer housed at USPL.[1] Because Plaintiff's request relates solely to alleged wrongdoing on the part of USPL employees, the Court would be unable to provide Plaintiff with effective relief and his requests for injunctive relief are moot. Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*. Consequently, "[m]ootness is a threshold issue

---

[1] Despite Plaintiff's request in this case that he not be transferred in violation of his medical hold, Plaintiff brought another action in this Court seeking injunctive relief to restore his date for transfer to a halfway house, claiming defendants were improperly delaying his transfer. *See Bell v. English*, Case No. 18-3276 (D. Kan.).

because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974). The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement. *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody.") (citations omitted).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. Because Plaintiff is no longer incarcerated at USPL, his claims for injunctive relief are moot and subject to dismissal.

### 2. *Denial of Access to the Courts*

Plaintiff's claim that he was denied access to the courts fails to allege an actual injury. *See Proch v. Baker*, Case No. 14-3021-CM, 2017 WL 2793922, at *7 (D. Kan. June 28, 2017) (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996) (violations of the constitutional right of access

to the courts require a showing of injury due to the deprivation); *Sterling v. Edwards*, 881 F. Supp. 488, 490 (D. Kan. 1995) (there must be prejudice)). The Court notes that Plaintiff has filed numerous actions in this Court while housed at USPL. *See* Case Nos. 18-3219, 18-3232, 18-3276, 18-3277, and 18-3285.

Although it is well-established that a prison inmate has a constitutional right of access to the courts, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th

Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

A plaintiff must first allege facts in his complaint suggesting an actual injury, "an essential requirement of a denial of access claim." *Harrison*, 24 F. App'x at 967 (citing *Lewis v. Casey*, 518 U.S. 343, 351–52 (1996)). Plaintiff has failed to allege an actual injury. "It is not enough for [plaintiff] to state that he is unable to file motions or briefs." *Id*. Plaintiff was able to file the instant case and he has not alleged an injury resulting from his failure to file other actions.

### 3. *Retaliation*

Plaintiff fails to state a claim of retaliation. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is

imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims. Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

### 4. *Conditions of Confinement*

Plaintiff alleges that the walls in the SHU were "caked with black mold" and that he was provided with paper clothing and sheets after a torn towel was confiscated from his cell. A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive

and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

It is unclear how long Plaintiff was exposed to the alleged conditions. Plaintiff alleges no facts showing that Defendants "both knew of and disregarded an excessive risk to [his] health or safety" related to his exposure to mold or his contracting a staph infection. *See Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 794 (10th Cir. 2013). A "bare allegation of [the presence of] mold . . . does not create a reasonable inference regarding the sort of threat to [a plaintiff's] mental or physical well being which is necessary for violation of the Eighth Amendment." *Cox v. Grady Cty. Detention Center*, 2008 WL 1925052, at *3–4 (W.D. Okla. April 29, 2008) (citing *Dittmeyer v. Whetsel*, 91 F. App'x 111 (10th Cir. Feb. 11, 2004)).

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff has also failed to allege "deliberate indifference" by Defendants. Plaintiff's complaint regarding the conditions of his confinement at USPL is subject to dismissal for failure to state a claim of cruel and unusual punishment.

### 5. *Habeas Corpus Claims*

Challenges to prison disciplinary proceedings must be raised in a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. *Abdulhaseeb v. Ward*, 173 F. App'x 658, 659 n.1 (10th Cir. 2006) (citing *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (petitions under § 2241 are used to attack the execution of a sentence, including the deprivation of good-time credits and other prison disciplinary matters); *Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987) ("If [the petitioner] can show that his due process rights were violated in the subject disciplinary proceedings, then § 2241 would be the appropriate remedy to use to restore his good time credits."); *see also Gamble v. Calbone*, 375 F.3d 1021 (10th Cir. 2004) (inmates were entitled to habeas relief on grounds that revocation of their earned credits

resulting from unsupported disciplinary convictions violated due process), *superseded by statute on other grounds as stated in Magar v. Parker*, 490 F.3d 816, 818–19 (10th Cir. 2007).

Plaintiff may not challenge prison disciplinary actions and the loss of good time in this civil rights action, but may only do so by filing a petition for writ of habeas corpus. Moreover, a prerequisite to filing a habeas corpus petition in federal court is full exhaustion of all levels of administrative appeal, as well as all remedies available in the state courts.

### 6. *First Amendment – Religious Freedom*

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted); *see McKinley v. Maddox*, 493 F. App'x 928, 932 (10th Cir. 2012). In order to state a constitutional denial of free exercise of religion claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs." *Gallagher*, 587 F.3d at 1069. In addition, he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.* at 1070. "If the prisoner satisfies this initial step, defendants 'may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'" *McKinley*, 493 F. App'x at 932 (citation omitted). The court then balances factors set forth by the Supreme Court "to determine the reasonableness" of the conduct. *Id.*

The Tenth Circuit has identified "three broad ways government action may impose a substantial burden on religious exercise:"

> (1) requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct

> motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice—an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010, unpublished) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315)(10th Cir. 2010)). In Strope, the Tenth Circuit reasoned as follows:

> Illustrating the distinction between substantial burden and inconvenience, we held (1) the flat denial of a halal diet with approved meats was actionable, id. at 1316–20, but (2) an incident (the panel concurrence notes "sporadic incidents") in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable, id. at 1320–21; id. at 1325; see also Gallagher, 587 F.3d at 1070 (holding isolated violation of kosher restrictions did not support Free Exercise claim). We "assume[d] that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but that level had clearly not been reached.

*Id.* (citing *Abdulhaseeb*, 600 F.3d at 1321). In sum, mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden.

The court finds that the facts alleged in the Complaint show that Plaintiff was without his Bible for three days following a search of his cell. This was undoubtedly an inconvenience to Plaintiff or negligence, rather than a substantial burden on Plaintiff's exercise of his religion. Plaintiff's denial of religious freedom claim may be dismissed on this basis, unless he alleges sufficient additional facts in an amended complaint.

### 7. *Damages*

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides in pertinent part that

"[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Plaintiffs also seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind. Plaintiff's request for punitive damages is subject to dismissal.

**IV. Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[2] Plaintiff is given time to file a complete and proper amended complaint in which he (1) shows he has exhausted administrative remedies for all claims alleged; (2) raises only properly joined claims and defendants; (3) alleges sufficient facts to state a claim for a federal constitutional

---

[2] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (18-3206-SAC) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

violation and show a cause of action in federal court; and (4) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **February 4, 2019,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **February 4, 2019**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated in Topeka, Kansas, on this 11th day of January, 2019.**


                                              **s/ Sam A. Crow**
                                              **Sam A. Crow**
                                              **U.S. Senior District Judge**